# I. C. Caldwell, Appellant, *v.* East Broad Top Railroad & Coal Co.

*Deed—Conditions—Railroad station.*

Where a deed to a railroad company contains a condition that the company shall erect at a place designated a freight and passenger station, the character of the station to be maintained is to be determined by the needs of those who use it and of the company.

*Equity—Parol testimony to vary deed—Railroad—Obstruction of water power.*

Plaintiffs, in 1884, conveyed by deed to defendant company a right of way over his land for a railroad, on condition that defendant should erect at or near a place designated a freight and passenger station, with sidings for the convenient shipment of freight to and from the station. More than six years after the completion of the road, he filed his bill to compel by injunction the location of the siding in such a manner as to enable him to connect it with a track to his sawmill, and to require the defendant to so construct and maintain its road as to restore a water power on his

property, and to establish a station to be named "Caldwell." All the rights alleged in the bill, except that of having a station and siding, rested upon an alleged oral agreement made at and before the delivery of the deed. Defendant's answer alleged compliance with the condition of the deed in so far as plaintiff would permit, and denied the alleged oral agreement. It also alleged that, prior to the filing of the bill, plaintiff had instituted an action in ejectment to recover the land, and also an action to recover damages for the injuries complained of, which actions were still pending. The case was referred to a master, who heard the testimony of the plaintiff and the scrivener who wrote the deed, in support of the oral agreement, and the testimony of the agent of defendant denying that any such oral agreements had been made. The master decided that the testimony of the plaintiff and the scrivener was not sufficient to overcome the responsive answer, the testimony of defendant's agent and the corroborative evidence of the deed itself, and that therefore the alleged oral agreements were not established by the evidence. He further found that the injury to the water power was partly caused by plaintiff's own negligence, and that therefore plaintiff had no cause for an injunction. The master's finding was approved by the court below. *Held,* (1) That the master's finding was fully justified by the evidence; (2) that plaintiff had a full and adequate remedy at law to which he had in the first instance resorted, and to which he should be left.

Argued April 23, 1895. Appeal, No. 17, Jan. T., 1895, by plaintiff, from decree of C. P. Huntingdon Co., Sept. T., 1893, No. 63, dismissing bill in equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel the construction of sidings, the erection of a station, and the restoration of a water power to a proper condition.

The case was referred to J. F. Shock, Esq., as master.

From the master's report it appeared that on Feb. 15, 1884, plaintiff executed a deed for right of way to the East Broad Top Railroad & Coal Company.

The material portions of the deed were as follows:

"Witnesseth. That the said I. C. Caldwell for and in consideration of the sum of one dollar, and other considerations unto him well and truly paid at or before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, hath granted, bargained and sold, and by these presents doth bargain and sell unto the said East Broad Top Railroad and Coal Company, their successors and assigns, the free and uninterrupted use and privilege of the right of way for the said rail-

road through and over his farm and parcel of land, situate in Cromwell township, Huntingdon county, State of Pennsylvania, sixty feet wide, with such additional widths as may be required for the construction and operation and maintaining of a double track railroad on the line as now located, a plan whereof, more particularly describing and setting out said right of way may be hereto attached, upon condition, however, that the said railroad company shall erect and maintain, at or near where the said railroad, as now located, crosses the public road leading from Orbisonia to Shade Gap, on his said premises, a passenger and freight station, with the sidings necessary for the convenient shipment of freight to and from said station, to be erected and maintained as aforesaid, during the continuance of the right of way hereby granted to the said railroad company, or their assigns, and the said Caldwell hereby agrees to give such additional land, if more than the above mentioned sixty feet may be necessary, for the purpose of the erecting and maintaining of the said stations and sidings, as provided for in this condition free of cost to the said railroad company.

" To have and to hold said right of way, with the incidents and appurtenances thereof, to the said East Broad Top Railroad and Coal Company, their successors and assigns, for their proper use and behalf; and the said I. C. Caldwell doth release the said company, their successors and assigns from all damages accrued, or which may accrue, by reason of the use of said way or construction of said road on said premises, subject to the conditions upon which this grant is made and above stated."

The master reported, inter alia, as follows :

" The injuries complained of by the plaintiff in the bill appear to resolve themselves into two classes when considered with reference to their origin. The first class may be said to consist of those growing out of the alleged violations by the defendant company of the express conditions written in the deed for the right of way, viz : to erect and maintain a passenger and freight station, etc., to build a double track railroad (alleged by plaintiff) and the violation of the implied obligation on the part of the defendant company to, if possible, so construct its road as not to injure the water power or other property of the plaintiff. The second class may be said to consist of the alleged violation of the oral conditions claimed to have

been made at and before the execution of said deed and to constitute part of the consideration therefor, to wit: The alleged oral agreement to call said railroad station ' Caldwell.' The alleged oral agreement to so locate the sidings provided for in said deed as that the plaintiff could reach the same by a track from his sawmill, and the alleged oral agreement to so construct their road as not to obstruct, injure or impair plaintiff's water power, or interfere with the operation of his mill.

" We will first consider the complaints and allegations of the second kind or class, viz: Those based upon the violation of the alleged oral conditions or agreements, for the defendant company denies that any of the alleged oral agreements were ever made by them or their agent. The deed for the right of way was drawn by D. Caldwell, Esq., at his office in Huntingdon, on the 15th day of February, 1884, and it was on that day executed by the plaintiff and delivered to Dr. Lewis Royer for the defendant company. There were present at the preparation and delivery of the said deed, David Caldwell, Esq., the scrivener of the deed, and plaintiff's brother, I. C. Caldwell, the plaintiff, and Dr. Lewis Royer who represented the defendant company. The company desired to obtain amicably a right of way over plaintiff's land for their road. The plaintiff and David Caldwell as the owners of land and marketable timber in the vicinity of the line of the road, were interested in having the road made and having a shipping station established near plaintiff's sawmill. The above named three persons were engaged for some hours on that day in reaching an agreement and putting it into the form of a deed. The result of their meeting and their negotiations, so far at least as the same is evidenced by writing, is the deed for right of way printed in the appendix to the bill. This deed is in the usual form of such indentures, except that it contains a written condition that the company erect and maintain a passenger and freight station, with the sidings necessary, etc., on plaintiff's premises near his sawmill. It also has these significant words at the close of the habendum et tenendum clause, to wit: ' Subject to the conditions upon which this grant is made and above stated.' This deed is admitted by both sides to have been executed and delivered in the form it now is. There is no objection made to anything contained in it. There is no allegation that anything was omitted

from it by fraud, accident or mistake. The original deed has the appearance of having been carefully written. There is unused blank space in it in which other conditions, agreements or covenants could have been written, had the parties so desired.

" The plaintiff avers in his bill that this deed has not written in it all the conditions agreed upon as part thereof, and as part of the consideration therefor, between himself and the defendant's agent. He avers that, in addition to the covenants or conditions written in the deed, they orally agreed upon, and made part of the contract, the further conditions: That the station to be erected should be called ' Caldwell; ' that the sidings to be made should be located to connect a side track from the sawmill with the main line of the road, and that the water power should not be injured or the mill interfered with in the construction of the road, or as a result thereof. The plaintiff produced testimony intended to explain that these agreements were omitted from the deed because of the objection of Dr. Royer that they would make it cumbersome if inserted. Dr. Royer denies that they were omitted from the deed at his instance, and says that they were never made and were for that reason not inserted. It is certain that they were not written in the deed.

" The bill avers a breach of all these alleged oral agreements and therefore prays that decree be made, etc. The gist of the case, therefore, lies in the answers to the questions: Were such oral agreements made as alleged, so as to constitute part of the consideration of the grant? If so made, can they now, upon parol testimony, be inserted into, and in legal effect, made to constitute part of the original written contract? If they can be, what is the character and strength of the evidence required to establish them as part of such written contract?

" The averments in the bill are clear and positive. The answer, which is responsive to the bill, as clearly and positively denies said averments. The testimony of the plaintiff in support of the bill is clear and positive ' that all of the above mentioned conditions as to the right of way through my lands were promised and agreed to be performed by Dr. Lewis Royer on behalf of the company, at and before the execution and delivery of the right of way for the said road.' As to this, he is fully corroborated by his brother, the scrivener of the deed. On the

other side, the deed itself antagonizes the bill and the plaintiff's evidence in the following respects, viz: The scrivener, being learned in the law, knew the importance of reducing the entire contract to writing; being the brother and counsel of the plaintiff, he was interested in drawing the deed so as to express in it all agreements which were favorable to plaintiff; there was the space in the blank necessary for the purpose and it was not used; he added to the deed the words 'subject to the conditions upon which this grant is made and above stated,' which expression is reasonably interpreted to mean: 'Subject to the conditions upon which this grant is made and which are above stated;' thus formally excluding any conditions but those 'above stated.' In addition to this, and to the denial by the defendant that there were any conditions but those ' above stated' and written in the deed, the testimony of Dr. Lewis Royer is absolutely positive that 'no agreements whatever were made prior to time of signing the agreement that were not contained in the paper.' ' There was no agreement, engagement or covenant made on part of the company, except those contained in the right of way on the day of that agreement.'

" This case is indeed remarkable for the full, perfect and complete contradictions in the testimony on the above point, when it is considered that all the witnesses are persons whose credibility would not ordinarily be questioned. On the one side we have the testimony of the plaintiff and D. Caldwell, Esq. Opposed to this is the deed and the testimony of Dr. Royer. If we consider that the testimony of D. Caldwell is neutralized or destroyed by the contradictory testimony of Dr. Royer, there is left the testimony of the plaintiff only, against the deed. There is absolutely no weight or preponderance of testimony in favor of plaintiff on the first question stated above. Considering the plaintiff's interest in its effect on his credibility, and that the deed, though drawn by his own counsel, is adverse to him, the preponderance or weight of the evidence is with the defendant more than the plaintiff. We must consider now what character of testimony is required to vary, change, amend or reform a sealed written instrument. . . .

" In the case under consideration we have the testimony of the plaintiff and one credible witness that certain oral agreements were made. We have the answer and denial of the de-

fendant company, supported by the testimony of one credible witness and the persuasive evidence of the deed itself, that said oral agreements were never made. If it requires the testimony of two credible witnesses, or the equivalent thereto, to overcome the responsive denial of the answer, then it clearly follows that the testimony of the credible witnesses (the plaintiff being one of them) is insufficient to overcome both the responsive denial of the answer, and the strong evidence in support of said denial, put in by defendant's witness. The master does not know, on account of the contradictory nature of the evidence, whether the alleged oral agreements were made or not made. The testimony is irreconcilable; for Dr. Royer denies that injury to the water power was even thought of, and much less made the subject of a special oral agreement. The master cannot therefore find as a fact that the oral agreements alleged in the bill were made, even as between the plaintiff and the defendant company's agent.

" This, then, leaves nothing to support the bill but the allegations of injuries which we included in the first class, viz: That the written conditions in the deed relative to the construction and maintenance of a passenger and freight station and sidings, and the construction of a double track road, and the obligation of the defendant company to so construct its road as not to injure plaintiff's water power or retard the operations of his sawmill, have not been performed. These are alleged violations of the conditions of the contract as it was actually written, or grow out of those conditions.

" As to the first of these complaints set forth in the 4th and 11th paragraphs of the bill: The defendant company alleges performance, and holds that it is not bound to do anything more than has been done in the erection of a station, the construction of sidings or the laying of tracks. There is no doubt but that there has been performance to the extent of the erection of a shed for passengers at or near the place fixed upon in the deed for the same, and to the extent of laying a single track, and to the extent of the construction of sidings for the shipment of car load lots of freight to and from said station and sidings. The deed does not describe the character of station to be erected, nor absolutely require the construction of a double track road. Whether or not what has been done by the defend-

ant company in the way of performance is performance of these provisions of said deed according to their true intent, under all the circumstances, as they existed therein and have developed since, are clearly matters dependent upon the proper construction of said deed. These questions, it seems to me, are of the kind that courts of law have been established to determine. In an action of ejectment or a suit for damages, the jury under proper instructions from a law judge as to the construction of the deed, would determine whether or not there has been performance. . . .

"The company would be bound to protect its embankment, where it extended it into an ancient water way, in such manner as that plaintiff would not be injured by the washing of debris therefrom into the tail race. That injury of this kind exists is apparent, both from the evidence and from an inspection of the premises. That the plaintiff contributes somewhat to his own injury in this respect by allowing tree tops and other rubbish thrown into this swale or old channel by him, or those under him, whereby the water is dammed back and made to rise higher upon the side of said embankment, is probable. That said water power can be fully protected from further injury of this kind by the plaintiff's removing the above mentioned obstructions from the channel, and by the defendant's rip-rapping the foot of its embankment with the stone upon the ground, and other stone at the points where the water comes into contact with said embankment, is also highly probable. And because the defendant has not done so, or may not do so in the future, there is no question but that such injury as the plaintiff has sustained, or may yet sustain, by the acts or negligence of the defendant company, is reparable in damages; nor that the proper tribunal to determine the amount of such damages, whether they arise by the violation of a contract implied by the law, or based upon an oral agreement as alleged in the bill, is a court of law with its juries. Especially is this true in a case where a court of law has already taken jurisdiction. For ' courts of equity will not interfere where there is a concurrent jurisdiction in courts of law and where the latter have first taken cognizance unless a plain case be made in the bill.' Crane v. Ely, 37 N. J. Eq., 564.

" From the records of the court of common pleas of Hunting-

don county it appears that on Feb. 11, 1890, plaintiff began a suit for damages to No. 2, May T., 1890, against defendant company for the above cause of action, and that on Aug. 4, 1890, he began a suit in ejectment to No. 41, Sept. T., 1890, against the defendant to recover the land granted in the above mentioned deed for the right of way. These actions were both begun before the bill in this case was filed, and are both yet pending and undetermined.

" The master therefore finds as a fact that the oral agreements alleged in the bill as having been made, and the bill itself, so far as it depends on these, are not established and sustained by the evidence, and he holds that the questions in the case concerning the violation of the express and implied contracts contained in and growing out of the deed, are properly cognizable in a court of law, and he finds further that a court of law had taken cognizance of the same before the bill in this case was filed, and therefore that plaintiff is not entitled to assistance or relief in a court of equity, but should be relegated to his actions at law.

" He therefore suggests and recommends to the court to dismiss the plaintiff's bill in this case at the costs of the plaintiff, by a decree to be drawn for the purpose."

Exceptions to the master's report were dismissed in an opinion by BELL, P. J., and the bill was dismissed.

*Error assigned* was in dismissing bill.

*W. McK. Williamson*, for appellant.—Parol evidence is admissible to establish a contemporaneous oral agreement: Ferguson v. Rafferty, 128 Pa. 356 ; Thomas v. Loose, 114 Pa. 35 ; Walker v. France, 112 Pa. 203.

A court of equity has jurisdiction in this matter because it is an injury done by a corporation, and courts of equity are quick and astute in restraining corporations from the commission of injuries or trespass : Com. v. Bank of Penna., 3 W. & S. 193 ; Agar v. Regents Canal Co., Cooper's Chan. Rep. 77 ; Dun River Navigation Co. v. North Midland Ry. Co., 1 Eng. Ry. Cases, 135 ; Sarver's App., 81* Pa. 192 ; Com. v. Pitts. & Connellsville R. R., 24 Pa. 159 ; Stewart & Foltz's App., 56 Pa. 413 ; McCandless's App., 70 Pa. 210 ; Edgewood R. R. Co.'s App., 79 Pa. 257.

The injury complained of is a continuing one, and a court of equity has jurisdiction in case of a continuing or repeated trespass: 2 Beach on Mod. Eq. Jur., 796; High on Inj., sec 12; 1 Pomeroy's Eq. Jur. sec. 245; 2 Story's Eq. Jur. sec. 298; Mills v. New Orleans Seed Co., 7 Am. St. Rep. 672.

The crowning reason why equity has jurisdiction in this case is the true inadequacy of any remedy at law: 1 Beach on Mod. Jur. sec. 2; 2 Swift Dig., chap. 1, sec. 1; Gormley v. Clark, 134 U. S. 338–349; Kilbourn v. Sunderland, 130 U. S. 505–514; Fitzmaurice v. Mosier, 116 Ind. 363; 9 Am. St. Rep. 854; Denny v. Denny, 113 Ind. 22; Hodges v. Kowing, 58 Conn. 12; Godfrey v. White, 60 Mich. 443; McKinney v. Curtiss, 60 Mich., 611; Warner v. McMullin, 131 Pa. 370; Henderson v. Johns, 13 Colo., 280.

*J. D. Dorris, W. Dorris* with him, for appellee.—There is no averment in complainant's bill that he is without an adequate remedy at law: High on Inj. sec. 34; 1 Spelling Extraordinary Relief, sec. 338.

A fundamental doctrine underlying the entire jurisdiction of equity by injunction against the commission of trespass is, that where adequate relief may be had in the usual course of procedure at law, equity will not interpose by the extraordinary remedy of injunction: High on Inj., sec. 699, p. 539; sec. 702, p. 543; sec. 706, p. 546.

The admission of complainant that the building of a stone wall at the lower side of the railroad would be a complete remedy for the alleged injuries, is an admission that they are not irreparable. If the complainant would build the wall on his land, right at the line between him and the railroad company, the same results would be accomplished: Grubb's App., 90 Pa. 228; Washburn's App., 105 Pa. 480.

Equity will not interfere if law courts have first taken cognizance: Crane v. Ely, 37 N. J. Eq. 564; 1 Pomeroy's Eq., sec. 179.

The proper construction of a deed is not a subject of equity jurisdiction, and where there is neither averment nor proof of fraud, accident or mistake, a court of equity cannot be asked to reform a deed: Grubb's App., 90 Pa. 288; Simmons v. Hendricks, 53 Am. Dec., 441.

The fact, that complainant waited for six years after the construction of the railroad before filing his bill, would of itself be sufficient ground for refusing an injunction : Power's App., . 125 Pa. 175; Gatzmer v. St. Vincent School Society, 147 Pa. 313.

It is often the duty of a chancellor to consider the consequences of a decree he is asked to make, and to withhold it where greater harm result from making than from denying it : Normal School v. Cooper, 150 Pa. 84.

OPINION BY MR. JUSTICE FELL, June 3, 1895:

The plaintiff in 1884 by deed granted to the defendant a right of way over his land for a railroad. The only condition in the deed is that the defendant shall erect, at or near a place designated, a freight and passenger station with sidings necessary for the convenient shipment of freight to and from the station. More than six years after the completion of the road the bill in this case was filed to compel by injunction the location of a siding in such a manner that the plaintiff can connect with it a track to his sawmill, and to require the operation and maintenance of the defendant's road in such a manner as to restore a water power on the plaintiff's property, and to establish a station to be named " Caldwell." All of the rights claimed by the plaintiff, except that of having a station and siding, rest upon an alleged oral agreement made at or before the delivery of the deed.

It is alleged in the answer that the defendant has complied with the conditions of the deed as far as it was permitted to do so by the plaintiff; that a station has been built within a few feet of the place fixed by the deed, and a siding constructed , and that any failure in an exact compliance with the deed has been due to the plaintiff's refusal to give land for the purpose, as he had agreed, at a point where it was practicable to establish a station. The answer further distinctly denies that there was any agreement between the parties except that shown by the deed, and sets out that prior to the filing of the bill in this case the plaintiff instituted an action of ejectment to recover the land conveyed, and also an action to recover damages for the injuries complained of in the bill. Both of these actions are still pending.

The finding of the learned master, approved by the court, that the alleged oral agreement was not established by the testimony, seems to be fully justified. The claim for equitable relief then rests upon the alleged breach of the condition of the deed in relation to the erection and maintenance of a station, and upon the injury to the water power. The station erected is a board shed, and no agent has been placed there. In structure and management it does not differ from most of the stations on the road. As the agreement is silent upon the subject, the character of the station to be maintained is to be determined by the needs of the company and of those who use it. The testimony does not show that the defendant has not fairly and substantially complied with the conditions of the deed in this regard. The injury to the water power has been caused by the washing of the embankment of the road-bed, which extends to the edge of an old channel in which the water flows only when there is a freshet. At such times dirt and loose stones from the embankment are carried by the water to the tail-race and deposited there to such an extent as to fill it up. The master finds as a fact that the injury is caused in part by the plaintiff allowing tree tops and rubbish to be thrown into the old channel, and that the power can be fully protected by the removal of the obstacles by the plaintiff and by the rip-rapping of the banks at the foot of the embankment by the defendant. As the injury complained of is caused in part by the plaintiff's negligence he has no standing to ask that the defendant be enjoined, and under the findings the bill might have been dismissed on the merits.

As stated in the opinion of the learned judge of the Common Pleas, any trespass of which the defendant is guilty consists in the negligent exercise of an undoubted right, and for this the plaintiff has a full and adequate remedy at law, to which in the first instance he resorted, and to which he should now be left.

The decree is affirmed at the cost of the appellant.